IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 24-65-2 |
| LISA McELHONE | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

For six consecutive years, Defendant Lisa McElhone and her husband, co-defendant Joseph LaForte, filed fraudulent personal Pennsylvania tax returns that falsely claimed they were not residents of Pennsylvania when, in fact, they lived in Pennsylvania for the vast majority of those years. These false declarations allowed the defendant and her husband to avoid paying state income tax on millions of dollars of income that they reaped from LaForte's dominion over one of the largest investment frauds in this region's history. Although McElhone and LaForte were aided by their tax professionals—co-defendants Rodney Ermel and Kenneth Bacon—it was the taxpayers themselves who derived the most significant financial benefit from their joint scheme; while initially their false statements resulted in the failure to pay a few thousand dollars in tax year 2014, the amount of loss increased dramatically over time as LaForte's racketeering enterprise expanded and more money was funneled to the couple's personal accounts. By tax years 2018 and 2019, the false declarations of non-residency resulted in Pennsylvania being deprived of $976,458 and $418,993 in tax revenue, respectively, and the total amount of tax loss exceeded $1.6 million. A meaningful term of imprisonment for this defendant is necessary given the severity and longevity of this tax-dodging scheme, as well as for the reasons set forth in detail below and, if applicable, in the government's sealed sentencing supplement.

As this Court knows, the Third Circuit has set forth a three-step process which the district courts must follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.
>
> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force.
>
> (3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

*United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted) (citing *United States v. King*, 454 F.3d 187, 194, 196 (3d Cir. 2006)).

At the third step of the sentencing process, the Court must consider the advisory guideline range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted).

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

## I.     PROCEDURAL HISTORY

Defendant Lisa McElhone was charged by superseding indictment with three counts of wire fraud in violation of 18 U.S.C. § 1343 (Counts 7 through 9), one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371 (Count 10), and one count of evasion of payment in violation of 26 U.S.C. § 7201 and 18 U.S.C. § 2(b) (Count 11). The charged crimes related to two separate schemes to avoid paying state and federal income taxes on money that was paid to the defendant in connection with the operation of Complete Business Solutions Group, Inc., doing business as Par Funding ("Par Funding"). The government and the defendant subsequently entered into a written plea agreement in which the defendant agreed to plead guilty to Count Seven of the superseding indictment, which encompassed one of the two charged schemes (the scheme to avoid paying Pennsylvania income tax, as described above), with the government agreeing to dismiss the remaining counts at sentencing. This plea agreement contained a provision under Federal Rule of Criminal Procedure 11(c)(1)(C), wherein the parties have agreed to a proposed sentence of imprisonment in the range of 0 (zero) to 27 months, followed by no more than three years of supervised release, and a $100 special assessment.

The Court accepted the defendant's guilty plea on April 22, 2024. Sentencing is scheduled for October 23, 2025.

## II.    OFFENSE CONDUCT

The Commonwealth of Pennsylvania had a state income tax rate of 3.07% for tax years 2014 through 2019; in contrast, and as widely known, the State of Florida did not have a state income tax. The Pennsylvania Department of Revenue considers someone a resident of Pennsylvania if they are physically present in the state for at least 184 days a year and if they maintained a permanent place of abode in the state. Knowing the tax-saving benefits of a Florida

- 3 -

residency, one of the initial tax "strategies" proposed by co-defendant Ermel when he was retained by LaForte in 2014 was for the couple to claim non-residency on their personal Pennsylvania tax returns.

The problem, of course, was that McElhone and LaForte were Pennsylvania residents who had no intention of domiciling in Florida. They owned a home in Philadelphia where they both had full-time, in person jobs: LaForte was running Par Funding and McElhone was running a nail salon right down the street. In fact, location data from the couples' cellular phones (obtained via search warrant) placed them in Pennsylvania for at least 300 days during every year from 2014 through 2019 and often more than that, reflecting that the couple made no effort whatsoever to meet the 184-day residency threshold.

Nevertheless, for tax years 2014 through 2019, Ermel and his colleague Bacon prepared McElhone and LaForte's personal Pennsylvania tax returns to falsely claim non-residency and to misleadingly list various Florida addresses as their purported home addresses. For example, McElhone's 2014 PA-40 tax return did not list her primary personal residence in Philadelphia but instead listed the Florida business address of one of her attorneys. McElhone's 2015 PA-40 tax return also did not list her actual primary personal residence but rather listed a condominium unit in Florida that McElhone had not even begun to rent until several months into the following year (tax year 2016). Similarly, the defendant's 2018 PA-40 tax income return listed the address of her Florida realtor. McElhone signed these tax returns knowing that they were false.

The tax loss from this scheme is set forth in the chart below. *See also* PSR ¶¶ 158, 195. As noted above, McElhone personally profited from this scheme by not paying more than $1.6 million in income tax that was owed to the Commonwealth of Pennsylvania.

| Tax Year | Reported Pennsylvania Income | Pennsylvania Income as Resident | Unreported Income | PA Tax Loss |
|---|---|---|---|---|
| 2014 | $110,373 | $309,349 | $198,976 | $6,109 |
| 2015 | ($109,530) | $408,820 | $408,820 | $12,551 |
| 2016 | ($113,391) | $2,417,457 | $2,417,457 | $74,216 |
| 2017 | $22,839 | $5,461,672 | $5,438,833 | $166,972 |
| 2018 | $1,599,849 | $33,406,311 | $31,806,462 | $976,458 |
| 2019 | ($4,692,975) | $13,647,973 | $13,647,973 | $418,993 |
| **Total** | | | | **$1,655,299** |

### III.  SENTENCING CALCULATION

#### A.  Statutory Maximum Sentence.

The maximum sentence that may be imposed on the defendant is five years' imprisonment, a three-year period of supervised release, a $250,000 fine, and a $100 special assessment.

#### B.  Sentencing Guidelines Calculation.

The Probation Office correctly calculated the defendant's advisory guideline range as follows. The defendant's base offense level is 7, to which 16 levels are added because the loss to the Commonwealth of Pennsylvania was more than $1.5 million but less than $3.5 million, bringing her adjusted offense level to 23. PSR ¶¶ 194-99. After reductions for acceptance of responsibility and for being a zero-point offender, her final offense level is 18. *Id*. ¶¶ 200-03.

With a criminal history category of I (no prior offenses), the defendant's advisory guideline range is 27 to 33 months' imprisonment. *Id*. ¶ 238.

## IV.     ANALYSIS OF THE SECTION 3553(a) FACTORS

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

A.  **The Nature and Circumstances of the Offense**

The seriousness of this tax crime is evident from both the amount of fraud (over $1.6 million) and the duration of the scheme (six years). It was also committed by two taxpayers who were extraordinarily wealthy and who had the means to pay the Commonwealth what it was owed. Although McElhone did not formulate the fraudulent tax scheme and was assisted all-too-eagerly by two crooked tax preparers (Ermel and Bacon), she and her husband were the ones who reaped the primary financial benefit. The money that LaForte and McElhone illegally retained was no doubt used in part to fund their lavish lifestyle and to help build their large portfolio of investment properties. The nature and circumstances of this crime compels a term of imprisonment.

B.  **Characteristics of the Defendant**

The defendant is a well-educated and successful small business owner with a happy childhood, strong family support, and no history of addiction. She has no criminal history, and at the time she committed the crime she was financially secure. Rather than mitigate her situation, these factors arguably aggravate it because she clearly should have known better than to commit this crime. Moreover, these factors underscore that the crime was committed solely out of personal greed. That being said, and as the government has previously argued, some consideration should be given to the corrosive and malign influence that McElhone's husband, Joseph LaForte, appears to have had over anyone who ventured into his circle. The tax scheme to which McElhone knowingly entered was but one of the many crimes committed by and at the direction of LaForte, which included a scheme to avoid paying payroll taxes for Par Funding's employees and a scheme to deprive the IRS of taxable income derived from Par Funding's

payment of consulting fees to entities controlled by LaForte, both of which LaForte accepted responsibility for in his plea agreement and at his sentencing hearing.

      **C.**    **Just Punishment and Respect for the Law**

A meaningful sentence of imprisonment is necessary to adequately punish the defendant and to promote respect for the law. As the Guidelines recognize, "[t]ax offenses, in and of themselves, are serious offenses." U.S.S.G. § 2T1.1, comment. Through her conduct, McElhone and her co-conspirators caused Pennsylvania to lose over $1.6 million in taxes, which "are the lifeblood of the government, and their prompt and certain availability an impervious need." *Bull v. United States*, 295 U.S. 247, 259 (1935). Tax crimes are not victimless simply because the harm they inflict is diffuse. And the harm here was substantial: the tax loss is roughly equivalent to the taxes collectively paid by over 670 median Pennsylvanian households.[1] As McElhone and LaForte's income continued to rise, each year offered a new opportunity to take an off-ramp and stop stealing from the Pennsylvania fisc. Yet at each opportunity, McElhone and LaForte chose to continue violating the law.

      **D.**    **Need for Deterrence**

Although specific deterrence does not appear to be a major concern with this defendant, the need for general deterrence is strong. As the public knows, the government lacks the resources to identify, investigate, and charge every tax cheat, and when it does successfully prosecute a significant tax crime, it relies on the imposition of a meaningful term of incarceration

---

[1] The median household income in Pennsylvania in 2024 was $80,060. *See* https://fred.stlouisfed.org/series/MEHOINUSPAA646N. Conservatively assuming that the entirety of this was taxable at a flat income tax rate of 3.07%, a median family paid a tax burden of $2,458. The tax loss of $1,655,299 is approximately 673 times this amount.

to deter future tax evaders. The IRS estimates that the "tax gap"—or, the difference between what is owed in a given year and what is actually paid—may exceed $600 billion. *See* https://www.irs.gov/statistics/irs-the-tax-gap (accessed Oct. 6, 2025). Yet at the same time, criminal tax prosecutions are rare: according to the U.S. Sentencing Commission there were only 360 tax fraud sentencings in 2024. *See* https://www.ussc.gov/research/quick-facts/tax-fraud (accessed Oct. 6, 2025). The system of deterrence would break down if tomorrow's potential tax cheats were to see one of main beneficiaries of a $1.6 million tax fraud receive no or insignificant jail time. The need for general deterrence is further heightened by the high-profile nature of the Par Funding prosecutions and the media attention that McElhone's sentence will likely receive.

### E. Need for Avoid Sentencing Disparities

The need to avoid sentencing disparities for similarly situated tax offenders with large tax losses warrants the imposition of a meaningful term of incarceration. Although some degree of a mitigative variance is warranted for McElhone, a non-incarceration sentence would be out of line with defendants who committed equally large tax crimes.

### F. Need for Educational or Vocational Training or Medical Care

To the best of the government's knowledge, these factors are not implicated in the current case. There is no need to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." U.S.S.G. § 3553(a)(2)(D).

## V.   CONCLUSION

The government recommends a meaningful term of imprisonment for the reasons set forth herein and, if applicable, in the attached sentencing supplement.

                                     Respectfully submitted,

                                     DAVID METCALF
                                   United States Attorney

                                   */s Matthew T. Newcomer*
                                   MATTHEW T. NEWCOMER
                                   JOHN J. BOSCIA
                                   Assistant United States Attorneys

                                   EZRA K. SPIRO
                                   Trial Attorney
                                   U.S. Department of Justice Tax Division

## CERTIFICATE OF SERVICE

I hereby certify that this Sentencing Memorandum has been served on all counsel of record through the Electronic Case Filing (ECF) system including Alan Futerfas, counsel for defendant Lisa McElhone.

                                        */s Matthew T. Newcomer*
                                        MATTHEW T. NEWCOMER
                                        Assistant United States Attorney

DATED: October 15, 2025